STANDING BEAR v. CROOK. See Case No. 14,891.

STANGE (UNITED STATES v.). See Case No. 16,375.

STANHOPE (HEYDOCK v.). See Case No. 6,445.

## Case No. 13,285.
### STANLEY v. HEWITT.
[21 Jour. Fr. Inst. (1836) 165.]

Circuit Court, E. D. New York.

PATENTS—VALIDITY—PRIOR USE—PUTTING OUT ON TRIAL—EFFECT OF CLAIMING TOO MUCH.

[1. Where the subject of invention was a cooking stove, held, that putting a number of them out on trial in several families for the purpose of experiment and improvement was not such a public use as would result in a dedication to the public.]

[2. Where plaintiff, by using various devices that were old, had formed a combination which would have been patentable as such, but, instead of claiming a combination only, claimed the entire thing described, as consisting of constituent parts which he himself had invented, held, that the patent was void for claiming more than the real invention.]

[3. The patent to Henry Stanley, dated December 17, 1832, for an improved rotary cooking stove, is void.]

This was an action founded upon a patent granted to the plaintiff, Henry Stanley, by the United States, the 17th December, 1832, upon a specification and application made to the patent office the 11th of October, 1832, for an improved rotary cooking stove. The plaintiff, by several witnesses, proved the originality of the invention in him, its importance and usefulness, and that the defendant had, from patterns taken from the plaintiff's stove, made and caused to be made and sold a large number of stoves, and was still pursuing the business. The defendant, to show that the plaintiff's patent was void, called Elisha Town and his son, and others, to prove that in 1823 and 1824 he invented and procured to be cast a rotary stove, and that the plaintiff's stove revolved like it; also a Mr. Gould, to prove that the plaintiff took the collars and flues in the cap of his stove from said Gould's stove, and also other witnesses to show that the plaintiff, as well as others, had used the collars and flues long before the plaintiff's improved cooking stove was invented; and also that the defendant attempted to show that the plaintiff had sold his stoves and given his invention to the public before he applied for his patent.

The plaintiff, in reply, called numerous witnesses to show that Town's stove, whatever it was, was useless, and had been abandoned as such; and that the plaintiff had no knowledge of it when he made his invention and improvement; and that his stove, in all the important improvements by him claimed, was wholly unlike Town's stove; and that collars and flues were not claimed by him as his invention, independently of his rotary plate in which they were attached; and that when they were put upon the Gould stove it was done at the plaintiff's suggestion; and that all the stoves delivered out before the application for the patent were delivered to be used on trial, and with a view to test the utility of its improvements. The trial was a very labored one, and occupied five or six days; but finally resulted in a question of law, growing out of the wording of the specification, which appeared to have been drawn up by the plaintiff without proper legal advice.

On the part of the plaintiff it was insisted that the claim, in his summary, was for a combination of certain improvements he had made in the cooking stove, connected together and attached to the top or cap of his stove, put in motion; and that it was the combination which he claimed, and not the parts forming the combination separately, and that his specification would bear that construction.

On the part of the defendant it was insisted that the plaintiff had so worded his specification that it would not bear that construction, and that it really claimed the different parts comprising the top and cap of the stove separately and independently of any combination, and that his specification was otherwise defective.

S. P. Staples, J. P. Hill, and J. R. Staples, for plaintiff.

R. M. Sherman, Hugh Maxwell, Mr. Ormsby, and Mr. Harris, for defendant.

THOMPSON, Circuit Justice, in the progress of the cause, gave his opinion that putting the stoves out on trial and for the purpose of experiment and improvement was not such a public use of them as would be considered as a dedication to the public; that the plaintiff was justified and had a right to test the utility of his invention, and see what improvements might be made before he applied for his patent, and that this was an article which would be tested by being put into several families, where it might be differently used by different housekeepers.

In charging the jury, THOMPSON, Circuit Justice, after stating the case and the difficulties arising from the obscurity of the language employed in the summary of the specification, remarked that in all cases where consequences of great importance to the parties were involved the jury must expect that the views of each would be presented with great earnestness and zeal. Nor is it surprising (said he) that in such controversies, matters not materially connected with the merits of the issue should be brought before the court and jury during the progress of the trial.

These remarks are applicable to the case now under consideration. It evidently involves matters of importance to the parties concerned, and has been accompanied by circumstances having no material bearing upon the questions in issue. We, however, are to examine the controversy, and determine it by the law and the evidence, without reference to extrinsic matters having no bearing upon its merits. And in this view of the subject, it is of no consequence whether the plaintiff, Mr. Stanley, has or has not accumulated a fortune as the fruits of his invention. If by his own talents, industry, and perseverance he has produced a machine, useful in itself, and approved of by the public, he is entitled to the protection of the law, so far as he has rights to be preserved and guarded. And if, on the other hand, he has interposed claims which cannot be the subject of legal sanction, he must abide by the consequences of his fault or misfortune. I state to you, gentlemen, in the outset, that this is not a case free from difficulties. But I have the consolation of knowing that my decision of the matter need not be final, and that any mistakes committed here may be reviewed and corrected by another tribunal, where I, too, shall have an opportunity of considering the subject with more care.

In my view of the case, much evidence has been introduced upon both sides which is entirely irrelevant. The plaintiff's rights, whatever they are, depend upon his patent; and if he has any by his patent, and has not abandoned them to the public, he is entitled to protection. I confess to you that my own prepossessions lean towards useful improvements, and I would construe the patent act with a liberal spirit and expanded views. It is a beneficial law, having its foundations in public policy. Its object is to encourage the enterprise of ingenious men, that the results of their labours, being brought into view, may be first enjoyed by the inventors for a limited period, and then dedicated to the public benefit forever afterwards. Nevertheless, I do not mean to say that all patents are to be protected at all events, but those only are to be sustained which have the sanction of law. It is a well-known fact that patents are granted at the patent office, not after an examination into their merits, but upon ex parte statements, and hence their real claims may be afterwards investigated with proper strictness in a court of law.

There are some general rules always to be observed while considering this subject. In the first place, to entitle a patentee to maintain an action for a supposed violation of his rights, his invention must be both useful and new; not that its usefulness is to be scanned with a critical eye, to ascertain a given amount of benefit to be derived from it, but the invention must be useful, as contradistinguished from that which is frivolous, or wholly worthless. If not frivolous, or entirely useless, the requirements of the law in this particular are complied with. With regard to the invention before us, it is clearly useful. This is proved by the testimony of witnesses on all sides. It is proved, also, by the great extent of the plaintiff's sales, by the favour of the public, which has been liberally bestowed upon it, and by the palpable imitations of the plaintiff's models in the case under consideration.

If the plaintiff has legal rights here, there can be no doubt that they have been violated by the defendant. There is no substantial difference between the stove made by the defendant, and that invented by the plaintiff; the one is a copy of the other. And as to the extent of the violations, there is as little doubt. If you believe the testimony of Mr. Randal, the defendant sold a hundred stoves before the commencement of this suit, if his own declarations are to be credited, for he told the witness in express terms not only that a hundred stoves like these had been sold in Vermont, but that they had been sold by him. If this witness, therefore, is worthy of credit (and he stands entirely unimpeached in every respect), there can be no doubt that the plaintiff's rights have been violated by the defendant, if, in fact, it shall appear that he has any which the law can protect. But the

great question is whether he has any such rights, and the solution of that question is to be found in the patent itself. And here I may remark that much has been proved and said in relation to the inventions of Town and Gould. The evidence upon these points is only important in one point of view, and in that it will be here considered. It shows that the materials, or component parts, of Stanley's stove are not in themselves new; and if the plaintiff claims a combination of things, he has evidently taken old materials to form his machine with, whatever it may be.

.In relation to this part of the case, I would observe that the particular words used in the specification and summary of this patent are of no importance. The office of words is to convey ideas, and our province is to determine what the party intended to express by the language employed. Did the patentee intend to claim the discovery of a principle, in the abstract or philosophical sense of that term? Or did he intend to describe a contrivance, or machine, new and useful in reference to the purpose for which it was produced? He claims in his summary "the revolving top plate" as a constituent part of his invention, and the first inquiry is whether, before the use of Stanley's stove, a contrivance had been used by which the utensils to be heated had been brought over the fire by means of a top revolving upon its centre. If the patentee claims this revolving motion as his own discovery, in its application to a cooking stove, he evidently includes in his patent that which is not his own discovery; for Town's stove had a revolving top, or drum, intended to accomplish the same object, by means somewhat similar. It is very possible that Town could not maintain a patent for that invention, because he long ago gave it up, and abandoned it to the public. He did not, however, abandon it to the plaintiff, and all other persons might use it as well as he. If Town's discovery was abandoned, the only claim to it which Stanley can maintain is the use of the thing as a part of his combination; and here we must determine what Town's invention was.

It is evident that he invented a revolving drum or top of a stove, to convey vessels to and from the fire by a rotary motion, and concentrate the heat around them when placed there. This contrivance he gave up, or abandoned, because it was useless,—that is, useless in its then combination, though not in the abstract,—for the principle or contrivance, as to the revolution, remains. As a cooking machine, the stove of Town was good for nothing; but its revolving motion might be made useful when brought in connexion with other constituents properly adapted to the objects in view. The same remarks are applicable to the raised covers or collars, and the flues. Each of these was old, and each had before been used, either by itself or in other combinations. Stanley himself had used the collars in his own stove, as far back as the year 1828. So had Wilson, and this part of the machine is confessedly old. So with regard to the flues. If Stanley was the inventor of these, he had abandoned them to the public long before the date of his patent, and he cannot, therefore, now claim them as the subject of a patent. But the question is whether Stanley does claim these materials or constituents as his invention, for if he does his patent is void. He would then claim as his own the discoveries of others, or endeavor to maintain that which he had by use dedicated to the public.

If, on the other hand, the patentee claims a combination here, and nothing more, then I have no hesitation in saying that his rights are secured. If he goes for the elements or constituents of his machine, his patent is void; but if he merely claims a new combination of old materials, his rights may be protected. The patent itself is somewhat obscurely drawn, but the invention is useful and meritorious, and I am disposed to give it all the protection which the law will allow. A liberal construction should be given to these instruments, nor should a severe criticism be bestowed upon language used, for the most part, by the inventors themselves, who are, in many cases, altogether unskilled in the use of technical terms. We are always to ask ourselves on these occasions, what was the intention of the writers, and, if that be discovered, the particular words used are altogether unimportant.

With these views, and under these considerations, I proceed now to give you my notions as to what this patent contains. It concludes with a summary in the following words: "The principle for which I claim the invention, and for which I ask letters patent," is "the revolving top plate or fixture into or on which are placed the principal utensils used in cooking," &c.

By the patent law, the party is required to describe that which he makes, that the public may understand the thing, and be able to construct the like after the patent shall have expired; and hence there is a necessity for a proper observance of this requirement of the act. In this case the plaintiff claims the specific thing set forth in the summary, and we must turn to the specification in order to understand what that thing is. The term used in the summary is "principle," but a reasonable interpretation must be given to it, or no sensible exposition of the party's meaning can be obtained. He evidently did not intend to claim the discovery of an abstract thing or entity, but some tangible mechanical contrivance, described in the specification. By "principle" he evidently intended a contrivance or thing described; and as there is no magic in words, we may fairly give this interpretation to the term used.

The plaintiff then patents this "revolving top plate," with its collars and flues, but instead of describing his invention as it really is, a combination, he described the constituent

parts. His improvement consists of a combination, and he should so have described it, and I have no doubt that a specification may be drawn which will secure all his rights. If the plaintiff had properly described his invention as it actually exists, his patent would have been good, for then the combination would have appeared.

But, in order to help out this part of the case, the drawings have been referred to. They show the combined thing, it is true, but the specification is silent as to the drawings, which are not necessarily to be taken as a part of it. If the specification itself made reference to the drawings, then they would become a part of it, and might be referred to for the purpose of elucidating anything obscure in the description. But here the description is perfect without a drawing, and most probably a mechanic could make the contrivance, without resorting to the drawings at all for explanation. The specification very clearly describes the revolving top plate, part by part, and in the summary the plaintiff claims the entire thing described; not as a combination, but as consisting of constituent parts, which he himself had discovered. Here lies his error, and upon this ground his action must fail. That my views on this subject may be clearly understood, I adopt the language of Lord Eldon in the case of Hill v. Thompson, 3 Mer. 622, as containing what I consider a concise summary of the law on this point. He observes that: "The judge, in his direction to the jury, has stated it as the law on the subject of patents, first, that the invention must be novel; secondly, that it must be useful; and thirdly, that the specification must be intelligible. I will go further, and say that not only must the invention be novel and useful, and the specification intelligible, but also that the specification must not attempt to cover more than that which, being both matter of actual discovery and of useful discovery, is the only proper subject for the protection of a patent. And I am compelled to add that if a patentee seeks by his specification any more than he is strictly entitled to, his patent is thereby rendered ineffectual, even to the extent to which he would be otherwise fairly entitled. On the other hand, there may be a valid patent for a new combination of materials previously in use for the same purpose, or for a new method of applying such materials. But, in order to its being effectual, the specification must clearly express that it is in respect of such new combination or application, and of that only, and not lay claim to the merit of original invention in the use of the materials. If there be a patent both for a machine, and for an improvement in the use of it, and it cannot be supported for the machine, although it might for the improvement merely, it is good for nothing altogether, on account of its attempting to cover too much."

After a full view of this case, I am compelled most reluctantly to come to the conclusion that the plaintiff has undertaken to secure more than he has a right to claim, and in my view of the law he cannot recover. He should have patented his combination, and not his constituent parts. I regret this result the more because I consider that the plaintiff has invented a machine or contrivance ingenious in itself, and highly useful for the purposes to which it is to be applied. I would protect him if I could conscientiously do so under the views of the law which I have taken, and I consider the whole matter rather as a question of law for the court than as a question of fact for the jury. If, however, the parties prefer to go to the jury upon any of the matters in issue, they have a right to take that course; but I would choose, if I could, to put the cause in that shape which would be most likely to secure the plaintiff's rights, if I have mistaken the law applicable to the case, or given an incorrect construction of the patent.

(The plaintiff voluntarily submitted to a nonsuit, with leave to move to set it aside hereafter.)

NOTE. The above opinion, expressed to the jury in said cause, was taken down at the time by one of the counsel for the plaintiff, was then shown to Judge Thompson, by him examined and approved, and is published as corrected by him. S. P. Staples. [See Case No. 13,286.]